UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 06-21802-CIV-UNGARO-BENAGES

LAWRENCE LEVY,
      Petitioner,

v.

CITIGROUP GLOBAL MARKETS, INC.,
f/k/a SALOMON SMITH BARNEY, INC.,
      Respondent.
_____/

**ORDER DENYING PETITIONER'S PETITION TO
VACATE ARBITRATION AWARD AND GRANTING
RESPONDENT'S MOTION TO CONFIRM ARBITRATION AWARD**

THIS CAUSE is before the Court upon Petitioner's Petition to Vacate Arbitration Award, filed July 20, 2006.[1] (D.E. 1.) Respondent filed its Opposition to Petition to Vacate on July 27, 2006, (D.E. 4, 5) to which Petitioner replied on August 7, 2006. (D.E. 7.) Also before the Court is Respondent's Motion to Confirm Arbitration Award, filed July 28, 2006. (D.E. 6.) Petitioner filed its response on August 22, 2006, (D.E. 9) to which Respondent replied on August 31, 2006. (D.E. 10.) The matters are ripe for disposition.

THE COURT has reviewed the Motions, the pertinent portions of the record, and is otherwise fully advised in the premises.

FACTS AND PROCEDURAL BACKGROUND

---

[1] Petitioner brought this action in the Eleventh Circuit Court in and for Dade County, Florida, and served Respondent with Petitioner's Petition to Vacate Arbitration Award on June 30, 2006. (Notice of Removal ¶ 1 & Ex. A.) On July 20, 2006, Respondent filed a Notice of Removal. (D.E. 1.) Petitioner's Petition to Vacate Arbitration Award is included in Exhibit A to the Notice of Removal.

1

This action arises out of the arbitration of a claim filed with the New York Stock Exchange (NYSE) by Petitioner Lawrence Levy against Respondent Citigroup Global Markets, Inc., relating to financial advisor Larry Gordon's alleged execution of a speculative options trading strategy without full risk disclosure.  (Notice of Removal ¶ 11 & Ex. A-2.)[2]  In his statement of claim, Petitioner alleged violation of industry rules and Florida Statutes section 517; breach of contract; breach of fiduciary duty; common law fraud; and negligence.  *Id*.

As the basis for these allegations, Petitioner asserted that he opened an account with Respondent in March 1994 and that between March 1994 and October 1995 he deposited a total of approximately $6,918,853.44 with Respondent.  (Statement of Claim 2-3.)  Petitioner maintains that he explained to Respondent that his objective was to protect his investment so that he could live off of the interest; that he "specifically explained to Respondents [sic] and the financial advisor that he was not looking to speculate and that he wanted to be 'ultra conservative.'"  *Id*.  Petitioner asserted that for a period of about five years, Respondent "handled [Petitioner's] account and a majority of the recommendations," but that Petitioner did select "some individual stock."  *Id*. at 4.  Petitioner asserted:

> The financial advisor then began to write naked put options on various stocks. [Petitioner] did not have any investment experience in writing naked puts so he trusted Respondent and the financial advisors' advice and guidance in making those investments.  At first, these investments worked in [Petitioner's] favor and there was income brought into the account from writing the puts. [Petitioner] consistently reminded Respondent of his financial objectives and [Respondent] assured him that the investments were proper.

*Id*.  Petitioner also asserted that Respondent "recommended numerous high yield bonds

---

[2]  Petitioner's Petition to Vacate Arbitration Award is included in Exhibit A to the Notice of Removal.  Petitioner's Statement of Claim filed with the NYSE is included in Exhibit 2 to the Petition to Vacate Arbitration Award, within Exhibit A to the Notice of Removal.

2

(i.e. junk bonds) and continuously added these positions to [Petitioner's] account until he had approximately $2,400,000.00 worth of junk bonds in his account." *Id*.  Petitioner asserted that he withdrew money from his account on a monthly basis to pay his living expenses, and that "[b]y August 2000, [Petitioner's] account was worth approximately $5,961,077.84 with no margin whatsoever." *Id*. at 5.  Petitioner asserted that "by November 2000, [his] account lost approximately $1,000,000.00 in only ninety days." *Id*.  Petitioner claimed that "over the next twelve months, [his] margin balance grew from zero to over $1,000,000.00," and that the "value of [his] account began to drop dramatically." *Id.*  Petitioner maintained that Respondent had discretion to buy and sell, and that Petitioner continued to express his concerns regarding Respondent's management of Petitioner's account.  *Id*.  Petitioner alleged that he suffered "a loss . . . due to Respondent's misconduct of approximately $2,100,000.00 during the time period of August 2000 through June 2002," and that "[a]n additional approximate $700,000.00 was lost after the account left Respondent due to options that Respondent bought (and wrote) expiring as late as January 2003." *Id*. at 6.

Respondent denied all of the allegations of Petitioner's claim, and denied any liability or wrongdoing.  (Answer 1.)  Respondent asserted that Petitioner "is a sophisticated, wealthy investor with more than thirty years of experience in the stock market," and– contrary to Petitioner's representation in his complaint that his investment profile was "ultra-conservative"– Respondent asserted that Petitioner "had a self-described 'aggressive' risk tolerance, investment objectives allowing for 'speculation,' experience investing in options since 1970, and a self described interest in investing in the following types of equities: purchase of calls and puts, sale of covered calls, sale of uncovered (naked) options, and spreads." *Id*. at 2.  Respondent asserted

that the majority of Petitioner's losses "arose from stocks entirely attributable to [Petitioner]," that Petitioner was "a former owner of a telecommunications company," and that he "invested heavily in companies in the telecommunications sector." *Id*. Respondent further asserted that Petitioner "had a penchant for highly speculative equity and debt investments including so called junk bonds, 'penny stocks,' speculative telecommunications, pharmaceutical, and technology issues, naked option trading, high yield bonds (including 'junk bonds' in speculative foreign markets like Russia and Guam), and commodities trading." *Id*. Respondent also asserted that Petitioner's financial advisor "had no discretion to trade in [Petitioner's] account without [Petitioner's] authorization." *Id*. at 3. Further, Respondent asserted that Petitioner's financial advisor had warned Petitioner "of his high risk investment strategies," and "to 'lighten up' on high yield debt and naked option trading." *Id*. Respondent claimed that in the statement of claim, Petitioner "fail[ed] to acknowledge the effect of [his] withdrawals in depleting the balances of his account," and that Petitioner "withdrew in excess of $7.6 million dollars over the life of his account with [Respondent] (not including an additional approximately $3,023,000 that he withdrew upon closing the account)." *Id*. Respondent argued that "the amount and size" of Petitioner's yearly withdrawals contradicted Petitioner's claim that his investment objective was "ultra-conservative." *Id*. at 4.

After eight days of arbitration hearings, the arbitration panel entered an award on April 3, 2006, dismissing Petitioner's claims "in all respects," denying Respondent an award of attorneys' fees, assessing against Respondent the forum fees amounting to $17,000.00, and assessing against the parties equally the pre-hearing conference costs amounting to $1,350.00. (Notice of

Removal, Ex. A-1.)[3]  On July 20, 2006, Petitioner filed a petition to vacate the arbitration award pursuant to the Federal Arbitration Act (FAA) , 9 U.S.C. § 10 and the Florida Arbitration Code, Fla. Stat. § 682.13.[4]  Respondent filed its motion to confirm the arbitration award pursuant to 9 U.S.C. § 9 and Fla. Stat. § 682.12.

Petitioner contends that the arbitration award should be vacated because the arbitration panel's chairman "was biased and prejudiced against [Petitioner] and his counsel, he improperly limited discovery, the [arbitration panel] refused to hear relevant evidence, and they entered an award that is arbitrary and capricious."  (Pet. to Vacate ¶ 27.)  Petitioner argues that the chairman of the panel unreasonably limited discovery by "den[ying Petitioner's] request for copies of customer complaints against [Respondent and Larry Gordon] despite it being a clear issue in the case."  *Id*. ¶ 19.  Petitioner argues that the arbitration award is arbitrary and capricious because the arbitration panel dismissed all of Petitioner's claims, awarding him no money, but also denied Respondent an award of attorney's fees, assessed the forum fees against Respondent, and referred Respondent to NYSE Enforcement for review of supervision and record keeping.  *Id*. ¶ 20-23.

## LEGAL STANDARD

The court reviews commercial arbitration awards pursuant to the FAA.  *See* 9 U.S.C. §§ 1-16.  The FAA creates a presumption in favor of confirming arbitration awards, and sets forth

---

[3]  Petitioner's Petition to Vacate Arbitration Award is included in Exhibit A to the Notice of Removal.  The Arbitration Award is included in Exhibit 1 to the Petition to Vacate Arbitration Award, within Exhibit A to the Notice of Removal.

[4] Florida case law provides that there is no substantive difference between the federal and state arbitration laws, and that the courts may look to federal law to interpret the Florida arbitration statute.  *See Davenport v. Dimitrijevic*, 857 So. 2d 957, 961 (4th DCA 2003).

only four grounds for vacatur. *Montes v. Shearson Leahman Bros., Inc.*, 128 F.3d 1456, 1458 (11th Cir. 1997). Judicial review of arbitrators' decisions is limited, as the court must "give considerable leeway to the arbitrator, setting aside his or her decision only in certain narrow circumstances." *Scott v. Prudential Sec., Inc.*, 141 F.3d 1007, 1014 (11th Cir. 1998) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). The party seeking vacatur bears the burden of establishing grounds sufficient to vacate the arbitration award. *Id*. (citing *O.R. Sec. Inc. v. Prof. Planning Assoc.*, 857 F.2d 742, 746 (11th Cir. 1988)).

> The FAA provides that the court may vacate an arbitration award:
>
> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). The Eleventh Circuit has recognized three additional non-statutory grounds for vacating an arbitration award: (1) where the award is arbitrary and capricious, *Montes*, 128 F.3d at 1458 (citing *Ainsworth v. Skurnick*, 960 F.2d 939, 941 (11th Cir. 1992); *Raiford v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 1410, 1413 (11th Cir. 1990); *United States Postal Serv. v. Nat'l Ass'n of Letter Carriers*, 847 F.2d 775, 778 (11th Cir. 1988)); (2) where enforcement of the award is contrary to public policy, *id*. (citing *United States Postal Serv.* 847 F.2d at 671; *Delta Air Lines, Inc. v. Air Line Pilots Ass'n*, 861 F.2d 665, 671 (11th Cir. 1988)); and (3) where there is a manifest disregard for the law. *Id*. at 1461-62 (concluding that "a

manifest disregard for the law, in contrast to a misinterpretation, misstatement or misapplication of the law, can constitute grounds to vacate an arbitration decision," and emphasizing that "this ground is a narrow one"). The Eleventh Circuit has stressed that it is well settled that "[c]ourts are generally prohibited from vacating an arbitration on the basis of errors of law or interpretation." *Scott*, 141 F.3d at 1014 (quoting *O.R. Sec. Inc.*, 857 F.2d at 746 (citing *Wilko v. Swan*, 346 U.S. 427 (1958))).

## ANALYSIS

In its petition to vacate, Petitioner argues that the arbitration award should be vacated on the following grounds: (1) the arbitration panel refused to hear evidence material to the controversy; (2) the chairman of the arbitration panel was biased; (3) the award is arbitrary and capricious. For the following reasons, the Court finds that Petitioner's arguments are without merit.

*Petitioner's Argument that the Arbitration Panel Committed Misconduct in Refusing to Hear Evidence Pertinent and Material to the Controversy*

Petitioner argues that the arbitration panel's chairman committed misconduct in refusing to require Respondent to produce the records of Petitioner's financial advisor Larry Gordon, and in refusing to allow Petitioner to introduce into evidence other customer complaints about Gordon that were similar to Petitioner's complaint. (Pet. to Vacate ¶¶ 52-53; 60; 99-100.) Petitioner argues that "one of the core issues in this case was whose idea was the naked put writing strategy," and that Petitioner wished to introduce into evidence other customer complaints about Gordon in order to support Petitioner's position that the naked option trading was Gordon's idea, not Petitioner's. *Id*. ¶ 61-64. Petitioner also asserts that the arbitration

panel's chairman refused to allow Petitioner to introduce evidence related to Respondent's supervision of its South Florida complex. *Id*. ¶ 72.  Petitioner argues that "one of the key issues that [Petitioner] was attempting to establish was the negligent supervision of the South Florida Smith Barney Complexes including, but not limited to, the branch in which [Petitioner's] account was maintained." *Id*.

The Court finds that Petitioner has not met his burden of demonstrating grounds sufficient to vacate the arbitration award on the basis of the arbitrators' refusal to hear evidence. The record reflects that in determining whether to allow Petitioner to introduce evidence of other customers' complaints about Gordon, the arbitration panel's chairman considered both the probative value of the evidence proffered and the danger of unfair prejudice.[5]  The arbitration panel's chairman weighed Petitioner's argument– that he needed the customer complaints in evidence to overcome Respondent's affirmative defense that the trading was Petitioner's idea– against Respondent's concern that it would have no opportunity for cross-examination.  (Opp'n to Pet. to Vacate, App. 14 (Arbitration Hr'g Tr. 414-23.)) *See In re Catanella & E.F. Hutton & Co.*, 1998 WL 33440, *2 (E.D. Pa.) (refusing to allow the introduction of the testimony of other

---

[5]The NYSE arbitration rules provide that the "arbitrators shall determine the materiality and relevance of any evidence proffered and shall not be bound by rules governing the admissibility of evidence."  NYSE Rule 620, *available at* http://rules.nyse.com.
 While arbitrators are not bound by the Federal Rules of Evidence, the Rules may provide guidance in determining the probative value of proffered evidence.  *See* NASD Arbitrator's Manual, *available at* http://www.nasd.com/ArbitrationMediation/ResourcesforArbitratorsandMediators/GeneralInformationandReference/ArbitratorsManual/index.htm.
 Under the Federal Rules of Evidence, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403.

customers in a brokerage account "churning" action, finding that the "probative value of the testimony of other customers [was] negligible," and that "[u]nproven accusations by other customers would do nothing to prove plaintiff's allegations" that defendant had churned plaintiff's account).  Moreover, the record shows that although the arbitration panel refused to allow Petitioner to introduce other customer complaints about Larry Gordon into evidence, the arbitrators did allow the introduction of evidence *relating to* those other customer complaints.  (Opp'n to Pet. to Vacate, App. 18 (Arbitration Hr'g Tr. 92-99; 110-13; 402-04; 809-16.))

The Eleventh Circuit has explained that a party seeking to vacate an arbitration award based on the arbitrator's refusal to consider pertinent and material evidence must show that the arbitrator's refusal caused the party prejudice.  *Scott*, 141 F.3d at 1017 (citation omitted).  Furthermore, "[a]n arbitrator need not consider all the evidence the parties seek to introduce but may reject evidence that is cumulative or irrelevant."  *Id*.  Petitioner has demonstrated no evidence of prejudice resulting from the arbitrators' refusal to allow into evidence other customer complaints about Larry Gordon, from their refusal to require Respondent to produce Larry Gordon's records, or from their refusal to allow the introduction of evidence related to Respondent's supervision of its South Florida complex.  The Court finds that the arbitration panel and its chairman did not commit misconduct in refusing to hear evidence.  The Court denies the petition to vacate with regard to Petitioner's argument that the arbitration panel refused to hear evidence pertinent and material to the controversy.

<u>*Petitioner's Argument that the Arbitration Chairman Was Biased*</u>

Petitioner also argues that the arbitration award should be vacated on grounds that the arbitration chairman was biased.  (Pet. to Vacate ¶¶ 73-97.)  In support of his argument,

Petitioner asserts the following: (1) while serving as an arbitrator in this case, the chairman also was acting as an arbitrator in other matters defended by Respondent's counsel, *id.* ¶¶ 73-74; (2) the chairman showed bias by allowing Respondent's counsel to "double team" during pre-hearing matters, *id.* ¶¶ 75-77; (3) on the first day of arbitration hearings, the chairman postponed the hearings due to the death of Respondent's lead counsel's sister-in-law, *id.* ¶¶ 79-83; (4) following the postponement, Petitioner filed a motion to recuse the arbitration panel but the chairman refused to recuse himself, *id.* ¶¶ 83-87; (5) the chairman refused "to insist that documents be timely produced and witnesses make themselves available to testify for both counsel,"[6] *id.* ¶¶ 89-90, 94; (6) the chairman overruled Petitioner's objections raising attorney-client privilege; *id.* ¶ 95; (7) at the conclusion of the hearing, the chairman did not ask whether the parties had a full and fair opportunity to be heard. *Id.* ¶ 97.

A party seeking to vacate an arbitration award for evident partiality must present evidence that would support a 'reasonable impression of partiality' on the arbitrator's behalf." *Scott*, 141 F.3d at 1015 (quoting *Lifecare Int'l, Inc. v. CD Med., Inc.*, 68 F.3d 429, 433 (11th Cir. 1995)). The Eleventh Circuit has explained that the "assertion of partiality . . . must be 'direct, definite and capable of demonstration rather than remote, uncertain and speculative." *Id.* (citing *Lifecare Int'l*, 68 F.3d at 433 (quoting *Middlesex Mut. Ins. Co. v. Levine*, 675 F.2d 1197, 1202 (11th Cir. 1982))). In *Gianelli Money Purchase Plan & Trust v. ADM Investor Servs. Inc.*, 146 F.3d 1309 (11th Cir. 1998), the court began its analysis of whether an arbitration award should be vacated

---

[6]Petitioner asserts that the chairman allowed "Gordon to testify in a piecemeal fashion," permitting Gordon to take breaks from testifying so that he could coach a youth basketball team and take his son to college. *Id.* ¶¶ 89-90. Petitioner also asserts that the chairman allowed the testimony of key witnesses to be taken by telephone, and that the chairman allowed production of documents at the arbitration hearing. *Id.* ¶ 94.

on grounds of evident partiality by noting that "the purpose of the [FAA] was 'to relieve congestion in the courts and to provide parties with an alternative method for dispute resolution that would be speedier and less costly than litigation.'" (quoting *O.R. Secs Inc. v. Prof'l Planning Assocs., Inc.*, 857 F.2d 742, 745 (11th Cir. 1988)).  The court explained that to give "full effect" to the "federal policy favoring arbitration," the "evident partiality exception must be strictly construed." *Id*. (citing *Davis v. Prudential Secs, Inc.*, 59 F.3d 1186, 1188 (11th Cir. 1995); *Booth v. Hume Publ'g, Inc.*, 902 F.2d 925, 932 (11th Cir. 1990)).  The law of the Eleventh Circuit is that "an arbitration award may be vacated due to the 'evident partiality' of an arbitrator only when either (1) an actual conflict exists, or (2) the arbitrator knows of, but fails to disclose, information which would lead a reasonable person to believe that a potential conflict exists." *Id*. at 1312-13.

   The Court finds that Petitioner has failed to satisfy his burden of demonstrating evident partiality.  First, Petitioner fails to demonstrate evident partiality by asserting that the arbitration panel's chairman was an arbitrator in other cases defended by Respondent's counsel.  Petitioner has not produced any evidence of an actual conflict sufficient to warrant vacating the arbitration award.  Moreover, this is not a case in which the arbitration award should be vacated due to the arbitrator's failure to disclose information which would lead a reasonable person to believe that a potential conflict exists.  Serving as an arbitrator in more than one case in which one or more of the parties is involved is not the kind of information that requires disclosure.  *See Fed. Vending Inc. v. Steak & Ale of Florida, Inc.*, 71 F. Supp. 2d 1245, 1250 (S.D. Fla. 1999) (citing *Matter of Andros Compania Maritima (Marc Rich & Co.)*, 579 F.2d 691, 701 (2d Cir. 1978)).  Even assuming *arguendo* that this were the type of information that must be disclosed, Petitioner was

11

on notice that the chairman was an arbitrator in other cases defended by Respondent's counsel because Petitioner's attorney represented the opposing party in both of the other cases in which the chairman served as an arbitrator. (Opp'n to Pet. to Vacate 13.)

Second, Petitioner fails to demonstrate evident partiality by asserting that the chairman allowed Respondent to "double team" Petitioner by permitting two attorneys to argue on Respondent's behalf during pre-hearing matters. Petitioner has proffered no evidence in this regard supporting the creation of a reasonable impression of partiality on the part of the arbitrator. The Court finds Petitioner's argument regarding "double teaming" to be without merit.

Third, the arbitrator's postponement of the arbitration hearing due to the unexpected death of Respondent's lead counsel's sister-in-law does not support Petitioner's assertion of evident partiality, and is not sufficient to serve as grounds for vacating the arbitration award. The arbitration hearing transcript, which is in the record, demonstrates that before deciding to grant the postponement, the arbitration panel considered the interests of both parties, and made efforts to accommodate both parties' concerns. (Opp'n to Pet. to Vacate, App. 19 (Arbitration Hr'g Tr. 6-20.)) The arbitrator's postponement of the arbitration hearing in this case was proper and does not create a reasonable impression of partiality.

Fourth, the fact that the arbitration panel's chairman refused to recuse himself does not, alone, demonstrate evident partiality. The record reflects that after the panel granted Respondent's motion to postpone, Petitioner moved to recuse the arbitration panel solely in an effort to begin arbitration more expeditiously. *Id*. App. 19 (Arbitration Hr'g Tr. 21) ("I want to ask [Respondent's counsel], maybe as a compromise, without any insult to the panel, you know,

obviously we have accepted the panel. We have no problem with the panel.  We have been in front of you before . . . . If I ask the panel to step down and get a new panel, if they can find three arbitrators that can go on Thursday and go next week . . . ."). It appears from the record that Petitioner's motive in moving to recuse the panel had nothing to do with the panel's alleged bias. Even assuming that Petitioner moved to recuse the panel due to alleged bias, Petitioner has not demonstrated any evidence of actual conflict on the part of the arbitration panel, and the chairman's mere refusal to recuse himself under the circumstances apparent from the transcript does not create a reasonable impression of partiality.

  Fifth, Petitioner fails to demonstrate evident partiality by asserting that the chairman refused "to insist that documents be timely produced and witnesses make themselves available to testify for both counsel." Respondent argues in its response– and its argument is supported by the record– that witness Richard Bermont "appeared in person and testified for hours," before his testimony was completed by telephone because of scheduling conflicts, and that Petitioner had the opportunity to cross-examine the witness.  (Opp'n to Pet. to Vacate 14 & App. 22 (Arbitration Hr'g Tr. 598-600.)) The record supports Respondent's argument that witness Scotland King testified on the telephone, that the parties discussed the fact that King could not be sworn, and that the parties stipulated that King could later appear before a notary and be sworn after she testified.  *Id*. 15 & App. 23 (Arbitration Hr'g Tr. 720-22.))  It appears from the record that several days after she testified on the telephone, King did appear in person before the arbitration panel and reaffirm that she testified truthfully, at which time Petitioner had the opportunity to cross-examine King in person. *Id*. 15 & App. 24 (Arbitration Hr'g Tr. 835.)) Respondent further argues– and the record supports Respondent's argument– that Larry Gordon

13

testified in person for more than a day and a half, that he was cross-examined by Petitioner, and that Petitioner agreed to allow Gordon to attend a basketball practice and to take his son to college, after which Gordon returned to testify in person and Petitioner had the opportunity for further cross-examination.  *Id*. 15 & App. 25 (Arbitration Hr'g Tr. 7, 8, 469-70, 834-35.))

Sixth, Petitioner's additional allegations– that the chairman overruled Petitioner's objections raising attorney-client privilege, and that at the conclusion of the hearing, the chairman did not ask whether the parties had a full and fair opportunity to be heard– do not support Petitioner's assertion of evident partiality, and are not grounds for vacating the arbitration award.  Petitioner has made the type of "remote, uncertain, and speculative" assertion of partiality that is  insufficient to serve as grounds for vacating an arbitration award.  *See Scott*, 141 F.3d at 1015 (citing *Lifecare Int'l*, 68 F.3d at 433 (quoting *Middlesex Mut. Ins. Co.* 675 F.2d at 1202)). The Court denies Petitioner's petition to vacate with regard to its argument that the arbitration panel's chairman was biased.[7]

*Petitioner's Argument that the Arbitration Award is Arbitrary and Capricious*

Petitioner argues that the arbitration award is arbitrary and capricious and should be vacated because the arbitration panel dismissed all of Petitioner's claims, awarding him no

---

[7]In its response to the petition to vacate, Respondent also argues that Petitioner waived any challenge to the arbitration award based upon the arbitration chairman's alleged bias when, at the close of the arbitration hearing Petitioner made the following laudatory comments to the arbitration chairman: "I do appreciate everything you've done on this case.  You've been on this case for almost close to three years now, and although lots of times I may not agree with every ruling that gets made in every case, I have a lot of respect for you, and I think you've handled yourself well in this case."  (Opp'n to Pet. to Vacate 3, 11 & Ex. 3 (Arbitration Hr'g Tr. 1720-21.)) The Court declines to address Respondent's waiver argument because the Court finds that Petitioner has failed to present evidence that would support a reasonable impression of partiality on the arbitrator's behalf.

14

money, but also denied Respondent an award of attorney's fees, assessed the forum fees against Respondent, and referred Respondent to NYSE Enforcement for review of supervision and record keeping. (Pet. to Vacate ¶¶ 20-23, 105-08.)

The court will not hold an arbitration award to be arbitrary and capricious "unless 'a ground for the arbitrator's decision can[not] be inferred from the facts of the case.'" *Scott*, 141 F.3d at 1017 (quoting *Raiford*, 903 F.2d at 1413). Where the arbitrators do not provide an explanation for the arbitration award, the court will not find the award to be arbitrary and capricious if "the arbitrators *could have* fashioned their award based on any number of valid reasons." *Id*. at 1017-18. The party seeking to vacate the arbitration award has the burden of refuting "every rational basis upon which the arbitrator could have relied." *Robbins v. Day*, 954 F.2d 679, 684 (11th Cir. 1992), *overruled on other grounds*, *First Options of Chicago v. Kaplan*, 514 U.S. 938 (1995).

Respondent offers as possible grounds for the arbitration award that the arbitrators could have determined that Larry Gordon did not commit an actionable wrong, and therefore Respondents would not be liable for negligent supervision, but that the evidence showed supervisory and record keeping flaws warranting regulatory scrutiny. (Opp'n to Pet. to Vacate 17.) In the alternative, Respondent suggests as possible grounds for the award that the arbitrators could have determined that the alleged negligent supervision was not the proximate cause of Petitioner's damages, or that the arbitrators could have determined that "an alleged failure to follow securities industry rules does not give rise to a legal claim,"[8] but that NYSE referral was

---

[8]Respondent cites *Thompson McKinnon Secs, Inc. v. Clark*, 901 F.2d 1568, 1570-71 (11th Cir. 1990) ("A sophisticated and experienced trader . . . cannot defend against his broker's action for nonpayment on the grounds that the broker violated exchange rules by over-extending credit

15

warranted based on possible supervisory and record keeping deficiencies disclosed by the evidence. *Id*. at 18.

In its reply, Petitioner attempts to refute Respondent's argument– that the arbitrators' award could have been based on their determination that Respondent is not liable for negligent supervision on the basis that negligent supervision is a derivative cause of action, and the arbitrators could have found that Larry Gordon did not commit an actionable wrong– by arguing that negligent supervision is an independent cause of action. (Reply to Opp'n to Pet. to Vacate 3.) Notwithstanding Petitioner's argument that a brokerage firm can be liable for negligent supervision where there is no finding that the broker committed an actionable wrong, the Court finds that as possible grounds for the arbitration award the arbitrators *could have* determined that Larry Gordon did not commit an actionable wrong, and therefore Respondents would not be liable for negligent supervision. *See In the Matter of Philadelphia Investors, LTD & Clarence Z. Wurts*, 1998 WL 122180, *11 (S.E.C. Release No. ID-123, Mar. 20, 1998).[9] Moreover,

---

to the trader."); *Thompson v. Smith Barney, Harris, Upham & Co.*, 709 F.2d 1413, 1419 (11th Cir. 1983) (finding for the brokerage firm in an action filed by an investor alleging that the firm and its broker failed to disclose to the investor risks inherent in options trading, determining that there was substantial evidence in the record to support a finding that the investor was "precluded from recovering on the omission-to-disclose claim since he knew of the risks associated with options trading, or, with the exercise of reasonable diligence, he could have found out about such risks").

[9]The Securities Exchange Commission explained: "Sections 15(b)(4)(E) and 15(b)(6)(A) of the Exchange Act authorize the Commission to impose sanctions against broker-dealers and associated persons who fail reasonably to supervise, with a view to preventing violations of the federal securities laws, other persons who commit such violations, if such persons are subject to their supervision. The elements of proof necessary in finding a violation of Sections 15(b)(4)(E) and 15(b)(6)(A) are: i) an underlying securities law violation; ii) association of the registered representative or other person who committed the violation; iii) supervisory jurisdiction over that person; and iv) failure of the broker-dealer and/or supervisory personnel to reasonably supervise the person who violated the securities laws." *In the Matter of Philadelphia Investors, LTD &*

Petitioner makes no argument to rebut the possible grounds for the award that Respondent raises in the alternative. The Court finds that based upon the evidence in the record, the arbitration award *could have* been based upon the arbitrators' determination that Respondent's alleged negligent supervision was not the proximate cause of Petitioner's damages; or upon the arbitrators' determination that Petitioner is precluded from recovering on its claim relating to Gordon's alleged execution of a speculative options trading strategy without full risk disclosure because Petitioner either was aware of the risks associated with options trading, or, he could have discovered such risks by exercising reasonable diligence.  *See Thompson*, 709 F.2d at 1419. Petitioner fails to meet his burden of refuting every rational basis upon which the arbitrator could have relied.  The Court denies the petition to vacate with regard to Petitioner's argument that the award is arbitrary and capricious.

*Respondent's Argument that the Court Should Award Sanctions Against Petitioner*

In its response in opposition to Petitioner's petition to vacate, Respondent argues that the petition to vacate "is so baseless and at odds with the controlling Eleventh Circuit standards for vacatur of awards" that the Court should award sanctions against Petitioner.  (Opp'n to Pet. to Vacate 2.)  In *B.L. Harbert v. Hercules Steel Co.*, 441 F.3d 905, 914 (11th Cir. 2006), the Court of Appeals for the Eleventh Circuit issued a clear warning to "those who attempt to salvage arbitration losses through litigation that has no sound basis in the law applicable to arbitration awards."  The *Harbert* court warned that "in order to further the purposes of the FAA and to protect arbitration as a remedy [the Eleventh Circuit is] ready, willing, and able to consider

---

*Clarence Z. Wurts*, 1998 WL 122180, *11 (S.E.C. Release No. ID-123, Mar. 20, 1998).

imposing sanctions in appropriate cases."[10]  *Id*.  The *Harbert* court stated:

> Courts cannot prevent parties from trying to convert arbitration losses into court victories, but it may be that we can and should insist that if a party on the short end of an arbitration award attacks that award in court without any real legal basis for doing so, that party should pay sanctions. A realistic threat of sanctions may discourage baseless litigation over arbitration awards and help fulfill the purposes of the pro-arbitration policy contained in the FAA.

*Id*. at 914-15.  The Court addresses Respondent's motion for sanctions against Petitioner in view of the Eleventh Circuit's clear directive to curb frivolous attacks on arbitration awards.[11]

The Court finds that in the instant case, Petitioner's petition to vacate the arbitration award has no legal basis and the imposition of sanctions against Petitioner is appropriate.  The law is clear in the Eleventh Circuit that the FAA creates a strong presumption in favor of confirming arbitration awards.  Petitioner bases his petition to vacate the arbitration award on the

---

[10]The *Harbert* court explained that it did not issue sanctions because the party opposing the motion to vacate the arbitration award did not move for sanctions against the party seeking to vacate the award, and because the party seeking vacatur "did not have the benefit of the notice and warning" provided by the *Harbert* opinion.  *B.L. Harbert*, 441 F.3d at 914.

[11] However, the Court notes that the *Harbert* court did not outline the appropriate standard to be applied.  *See Rueter v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2006 WL 2085240, *8 (N.D. Ala. July 18, 2006) (observing that *Harbert* does not "point to a standard, statute, or rule pursuant to which a court might craft an appropriate sanction," and, accordingly, analyzing "the propriety and scope of sanctions . . . under precedent set forth for sanctions awarded pursuant to Rule 11 of the Federal Rules of Civil Procedure").

In *Reuter*, the court applied the "objective standard for testing conduct under Rule 11" and made a determination of whether a petition to vacate the arbitration award was "reasonable under the circumstances."  *Id*. (citing *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998)).  The *Rueter* court followed the "two part test [of] (1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware that they are frivolous."  *Id*.  The *Reuter* court further observed that under a Rule 11 analysis, "sanctions are warranted when the claimant exhibits a 'deliberate indifference to obvious facts,' [but] they are not warranted when the claimant's evidence is merely weak but appears sufficient, after a reasonable inquiry, to support a claim under existing law."  *Id*. at *9 (citing *Baker*, 158 F.3d at 524).

18

following grounds: (1) the arbitrators' refusal to hear evidence; (2) the arbitrators' alleged bias; and (3) the award is arbitrary and capricious. To successfully argue that an arbitration award should be vacated on any one of these grounds, the moving party bears a heavy burden of proof. The Court finds that it is clear from the record– which includes the arbitration hearing transcript– that Petitioner had no reasonable basis under the law applicable to arbitration awards for filing its petition to vacate. Petitioner has controverted the pro-arbitration policy contained in the FAA by seeking to vacate the arbitration award without a good basis, and, as a result, has prolonged and made more costly the resolution of this dispute. The Court finds that pursuant to the Eleventh Circuit's decision in *B.L. Harbert v. Hercules Steel Co.*, 441 F.3d 905 (11th Cir. 2006), the imposition of sanctions reflecting the costs incurred by Respondent as a result of having to defend against Petitioner's petition to vacate and protect the arbitration award is proper. In order to determine the appropriate amount of sanctions, the Court directs Respondent to submit within ten (10) days of the date of this Order documentation establishing Respondent's actual costs incurred as a result of having to defend against this action. Accordingly, it is hereby

ORDERED AND ADJUDGED that Petitioner's Petition to Vacate Arbitration Award is DENIED. It is further

ORDERED AND ADJUDGED that Respondent's Motion to Confirm Arbitration Award is GRANTED, and the final award of the arbitrator entered on April 3, 2006 is CONFIRMED. It is further

ORDERED AND ADJUDGED that Respondent shall have ten (10) days from the date of this Order to submit documentation for the Court's review establishing Respondent's actual costs incurred as a result of having to defend against this action.

DONE AND ORDERED in Chambers at Miami, Florida, this 16th day of October, 2006.

*/s/ Ursula Ungaro*
_____
URSULA UNGARO-BENAGES
UNITED STATES DISTRICT JUDGE

copies provided: